THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**SHAHEED ALLAH, a.k.a.**
**FLOYD MAY #B17282**
  **Plaintiff,**

                       **04-1083**

**ADELLA JORDAN-LUSTER, et al.,**
  **Defendants.**

## ORDER AND MEMORANDUM OPINION

  Before the court are the Plaintiff's motion for partial summary judgment [43], the Defendants' response [46], Defendants' summary judgment motion [57] and Plaintiff's response [83] and Defendants' reply [85]. The defendants, ADELLA JORDAN-LUSTER, STEPHEN D. MOTE, ROGER E. WALKER JR., MELODY J. FORD, ELDON KENNELL, MICHAEL MELVIN, RICHARD RUNYON, and HENRY WALTON, moves for summary judgment through their attorney, Lisa Madigan, Attorney General of the State of Illinois, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR-7.1.

### Standard

  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.56©; *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985).  In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party.  *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992).  Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837.  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).  Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

  Fed. Rule Civ. Pro. Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

Plaintiff is an inmate currently incarcerated at Pontiac Correctional Center. Plaintiff filed his Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*. Specifically, Plaintiff claims his federal rights have been violated by Defendants' failure to provide him with a Halal diet or an alternative diet. Plaintiff's religious affiliation is documented in Departmental records as Muslim, which is also known as the Al-Islam faith. He also appears to claim that Defendant Runyon allegedly "knowingly and willingly refused to deliver a vegan tray to the Plaintiff after being ordered to do so by the warden." Further, the plaintiff claims Runyon deprived the plaintiff of his right to receive a religious diet and "additionally, participate in the fast of Ramadan in a meaningful way."

## UNDISPUTED MATERIAL FACTS

1. Plaintiff is a member of the Al-Islam faith, which is also referred to as the Muslim faith. Defendants' Exhibit 1, Deposition of Plaintiff Floyd May, taken March 30, 2005, ("Dep.") at 6, lines 14-19; Amended Complaint, ¶ 6. Plaintiff is a Muslim whose beliefs are sincerely held. *See* Plaintiff's Statement of Undisputed Facts and/or Declaration [44].
2. Plaintiff requested to be provided with a Halal diet. *Id.*
3. Plaintiff requested a vegan or vegetarian diet as an alternative if a Halal diet could not be provided. *Id.*
4. Plaintiff explained in detail in his letters and grievances what a Halal diet was and how it related to Plaintiff being a Muslim. *Id.*
5. Plaintiff explained in detail in his letters and grievances why he could not eat the meat or meals served with meat offered through the general menu. *Id.*
6. Plaintiff was in segregation during the events described in his Complaint. Plaintiff could not go to the prison dining hall during the events described in his Complaint. *Id.*
7. During the events described in Plaintiff's Complaint, Plaintiff could not purchase food from the prison commissary. *Id.*
8. During the events described in Plaintiff's Complaint, Plaintiff had no power to choose what food would be placed on his meal trays. *Id.*
9. Plaintiff requested that Defendants confer with Aqueel Khan, the Muslim Chaplain, to verify the validity of the Plaintiff's dietary request. *Id.*
10. Aqueel Khan was the Muslim Chaplain for Pontiac Correctional Center during all times relevant to Plaintiff's Complaint. *Id.*

11. Defendants did not speak with Aqueel Khan (Muslim Chaplain) about Plaintiff's religious dietary request. *Id.*
12. Plaintiff first request for a religious diet as it relates to this action occurred in the Summer of 2003. *Id.*
13. Defendants did not offer Plaintiff a religious dietary accommodation until September 7, 2004, over a year from the initial request. *Id.*
14. Defendants denied Plaintiff a Halal diet based on the alleged belief that the only dietary restriction for Muslims is the abstinence of pork and pork by-products. *Id.*
15. During the time period relevant to the events in Plaintiff's Complaint, to the Defendants' knowledge, the only known requirement for members of the Al-Islam or Muslim faith was abstaining from pork or pork byproducts. Defendant's Exhibit 2, affidavit of Adella Jordan-Luster; Defendants' Exhibit 1, Dep. at 14, lines 6-8.
16. Plaintiff does not share the belief that the only dietary restriction for Muslims is the abstinence of pork and pork by-products. *Id.*
17. Pontiac Correctional Center was already in compliance with this dietary requirement as pork and pork by-products are not served at Pontiac. Defendant's Exhibit 2, affidavit of Adella Jordan-Luster.
18. Plaintiff acknowledges that avoidance of pork is a tenet of his faith. Defendants' Exhibit 1, Dep. at 8, lines 2-3.
19. In addition to the avoidance of pork, Plaintiff asserts a Halal diet consists of "meat that has been slaughtered in the manner prescribed by the Sharia." Amended Complaint, ¶ 3.
20. According to Plaintiff, the prescribed method for Halal meat includes keeping the animal "in a humane way prior to slaughter," then slaughtering the animal by "slitting of the throat" while reciting the Qur'an. Defendants' Exhibit 1, Dep. at 8, lines 10-14.
21. Plaintiff can consume vegetables and grains without violating his faith. Defendants' Exhibit 1, Dep. at 10, lines 7-16.
22. The general prison diet includes fruits, vegetables, and bread. Defendants' Exhibit 1, Dep. at 11, lines 8-14.
23. Plaintiff requested an Islamic Halal diet in a written memorandum to Assistant Warden Adella Jordan-Luster on July 20, 2003. Defendant's Exhibit 3, Bates #000001.
24. Assistant Warden Jordan-Luster denied Plaintiff's request for a Halal diet in a written memorandum dated August 5, 2003. Defendant's Exhibit 3, Bates #000002.
25. Defendant Jordan-Luster left Pontiac Correctional Center on September 30, 2003. Defendant's Exhibit 2, affidavit of Adella Jordan-Luster.
26. Assistant Warden Walton affirmed the decision to deny Plaintiff a "Halal" diet in a memorandum dated March 31, 2004. Defendants' Exhibit 3, Bates #000004.
27. Acting Assistant Warden Melvin again affirmed the decision to deny a "Halal" diet in a memorandum dated April 16, 2004, in which he also noted that Plaintiff's religious affiliation only required the abstinence of pork and pork by-products, which the Department already adheres to. Defendants' Exhibit 3, Bates #000005.
28. Plaintiff's request for a Halal diet was again denied on August 24, 2004, in a written memorandum from Chaplain Kennell, stating as follows: "Imam Johnny Shabbaz, who is Muslim Chaplain for Lincoln, Logan, Decatur, Vandalia, Jacksonville, and Centralia, is an 'Orthodox' Muslim. It is his expertise that is adhered to in matters of the Islamic faith. As I said before, he states 'halal' is not required for Muslims. Accordingly, your request for 'halal' food is denied." Defendants' Exhibit 3, Bates #000003.

29. Defendant Runyon had no role in deciding whether to grant or deny Plaintiff a dietary accommodation, and Plaintiff's claims with respect to Defendant Runyon are that he allegedly "knowingly and willingly refused to deliver a vegan tray to the Plaintiff after being ordered to do so by the warden." Further, the plaintiff claims against Runyon is that Runyon deprived the plaintiff of his right to receive a religious diet and "additionally, participate in the fast of Ramadan in a meaningful way." *See* Amended Complaint, ¶ 20, 21, 24 and Plaintiff' response [83].
30. [Other than his own uncorroborated testimony], the plaintiff lacks evidentiary support of any weight loss or adverse health affects resulting from the provision of the general prison diet. Defendants' Exhibit 1, Dep. at 23, lines 9-23; at 24, lines 1-23; at 25, lines 1-13.
31. Plaintiff alleges that he there were many nights he went to bed hungry and feeling guilty because he was unable to fight off the hunger pangs. He watched his weight, endurance and overall health fluctuate dramatically during the 14 month period the Defendants denied the halal meal and an alternative meal. The plaintiff claims the routine consumption of margarine, salad dressing and other condiments led to constant bouts of diarrhea, stomach aches and hunger-induced headaches. He claims he felt unhealthy, weak and lethargic. *See* plaintiff's amended complaint [33] and Plaintiff's Statement of Undisputed Facts and Declaration [44].
32. Although Plaintiff was aware of the Departmental Rule requiring inmates to provide written verification from a faith leader that he was a member of that faith, that the faith required a particular diet, and including the actual requirements of the diet, Plaintiff never provided such written verification to support his requests for a dietary accommodation. Defendants' Exhibit 1, Dep. at 26, line 23; at 27, lines 1-19; at 28, lines 3-17.
33. Other components of Plaintiff's faith include prayer, fasting of Ramadan, charity work and pilgrimage to Mecca; while incarcerated, Plaintiff is able to exercise these religious beliefs by praying whenever he wishes and participating in Ramadan. Defendants' Exhibit 1, Dep. at 18, lines 8-23.
34. Director Walker's only alleged involvement was his review and denial of Plaintiff's appeal of his grievance requesting a Halal diet. Amended Complaint at ¶ 21-22, 24.
35. Plaintiff admits Defendant Walker did not actually sign the grievance appeal, as he alleges "Defendant John Doe #3" affixed Defendant Walker's signature to the document. Original Complaint, ¶ 24.
36. Defendant Mote's only alleged involvement was his review and denial of Plaintiff's grievance requesting a Halal diet. Original Complaint, ¶ 18-20.
37. Plaintiff admits Defendant Mote did not actually sign the grievance, as he alleges "Defendant John Doe #2" affixed Defendant Mote's signature to the document. Original Complaint, ¶ 20.
38. Plaintiff has been receiving a vegan diet since September 7, 2004. Defendants' Exhibit 1, Dep. at 12, lines 14-21.
39. There are over 50 different religious affiliations self-designated by inmates in the Illinois Department of Corrections. Defendants' Exhibit 4, Affidavit of Chief Chaplain William Watts.
40. Due to the numerous religions practiced within the Illinois Department of Corrections, and the corresponding accommodations inmates request, it is sometimes necessary for the chaplains to ask for verification by a religious leader outside the institution of the inmate's affiliation with the religion and any special accommodations required by the

faith.  Defendants' Exhibit 4, Affidavit of Chief Chaplain William Watts.
41. The Department's practice of limiting provision of special religious diets to inmates who hold a sincere belief and faithfully observe such diets is premised on concerns over administrative and security needs, as well as budgetary constraints.  Defendants' Exhibit 4, affidavit of Chief Chaplain William Watts.
42. Defendants Mote, Ford, and Jordan-Luster were all "personally involved" in denying Plaintiff a religious diet. *See* Plaintiff's Statement of Undisputed Facts and/or Declaration [44].
43. The Illinois Department of Corrections received federal funding during the years of 2002, 2003, and 2004.  *Id.*
44.  Illinois Department of Corrections employees and administrators do not personally receive federal funding on an individual level. Defendants' Exhibit 5, affidavit of Deputy Director Tony Small.

## DISPUTED[1] MATERIAL FACTS

1. Plaintiff's religion requires him to adhere to a Halal diet.
2. Plaintiff offered to pay for a Halal, vegan, or vegetarian diet with his own money.
3. The food delivered to Plaintiff during the events described in Plaintiff's Complaint was usually scattered all about on [Plaintiff's] tray resulting in cross-contamination.
4. The food delivered to Plaintiff during the events described in Plaintiff's Complaint became contaminated by way of liquid drippings as a result of the accumulation of steam inside of the closed meal trays.
5. Denying Plaintiff a religious diet for over a year, which forced Plaintiff to consume food that violated his religious beliefs, imposed a substantial burden on [Plaintiff's] ability to exercise his religious beliefs.

## IMMATERIAL FACTS

1.  Halal Food is a subject that is well documented.
2.  The Illinois Department of Corrections has previously been engaged in litigation involving the issue of Halal food.
3. Plaintiff provided documentary verification from the Islamic Food and Nutrition Council of America titled "Halal Consumer [Halal Revisted]" confirming the validity of Plaintiff's religious dietary request.
4. The Islamic Food and Nutrition Council of America is recognized as a certifying agency for Halal slaughter and Halal products by the U.S. Department of Agriculture.
5. Meals delivered to Plaintiff during the events described in this action were done so by way of truck, pushcart, elevator, and various sets of human hands.
6. Meals delivered to Plaintiff during the events described in the Plaintiff's Complaint were done so by way of Styrofoam trays with fold-over lids.

## Discussion

---

[1]Disputed material facts are taken from the plaintiff's statement of facts [44] and defendants' response [46].

Religious Land Use and Institutionalized Persons Act provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Applicability is confined to cases in which "the substantial burden is imposed in a program or activity that receives federal financial assistance; or the substantial burden affects . . . commerce . . . ." 42 U.S.C. § 2000cc-1(b). The statute defines "program or activity" to mean "all of the operations of any entity as described in paragraph (1) or (2) of section 2000d-4a of this title." 42 U.S.C. § 2000cc-5 (6). Thus, program or activity means "a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency . . . ; a college, university, or other post-secondary institution . . . or a local educational agency . . . ." 42 U.S.C. § 2000cc-5 (1),(2).

The Seventh Circuit has noted that "RLUIPA seeks to remove only the most substantial burdens States impose upon prisoners' religious rights, while giving States' penological interests due consideration. The statute does not promote religious indoctrination, nor does it guarantee prisoners unfettered religious rights, and not every challenge under RLUIPA will be deemed valid." *Charles v. Verhagen*, 348 F.3d 601, 611 (7th Cir. 2003). To prevail in a suit under RLUIPA, the plaintiff must show that the alleged violation has imposed a substantial burden on the plaintiff. *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899 (7th Cir. 2005). RLUIPA is not intended to elevate accommodation of religious practices over institutional order and security, but is applied with "particular sensitivity to security concerns." *Cutter v. Wilkinson*, 125 S. Ct. 2113, 2122-23 (2005).

As an initial matter, Plaintiff must show a substantial burden was placed upon the exercise of his religious beliefs to invoke RLUIPA. While incarcerated, Plaintiff has been able to pray at will and fast during Ramadan. With respect to his religious dietary requirements, the general prison diet includes fruits, vegetables, and bread, all of which are dietary items that do not violate Plaintiff's faith. Furthermore, the accommodation Plaintiff sought was a Halal diet, which requires ritualistically-slaughtered meat, a request that implicated both security and economic concerns for the institution. To assert an RLUIPA claim, Plaintiff must first demonstrate Defendants imposed a substantial burden on his religious exercise . Defendants have done nothing affirmatively to prevent Plaintiff from practicing his religious beliefs. RLUIPA does not guarantee Plaintiff the unfettered practice of his religion, particularly in circumstances where the Halal diet Plaintiff requested requires a dietary accommodation implicating ritualistic slaughter of the meat. As Plaintiff cannot meet his burden of showing his religious exercise was substantially burdened, Defendants' are entitled to and granted summary judgment on this issue.

In the case at bar, Plaintiff has not met his initial hurdle of showing a substantial burden was placed upon his religious beliefs. Plaintiff is a member of the Al-Islam faith, also referred to as the Muslim faith. Plaintiff admittedly could consume vegetables and grains without violating his faith. The general prison diet, which Plaintiff was previously receiving, included fruits, vegetables, and bread, all of which are dietary items that did not violate Plaintiff's faith. Thus, the practice of Plaintiff's faith was not hindered by the provision of a general prison diet rather

than the Halal diet Plaintiff sought. Additionally, other components of Plaintiff's faith include prayer, fasting of Ramadan, and charity work; while incarcerated, Plaintiff is able to exercise these religious beliefs by praying whenever he wishes and participating in Ramadan. In accordance with *Turner*, Plaintiff had other means of exercising his asserted right to practice his religion. Although he was not receiving a Halal diet, Plaintiff retained the right to refuse to consume any food products he felt were in violation of his faith. Hence, Defendants were not placing an affirmative burden on Plaintiff's ability to practice his religious beliefs.

Further, the court finds that the defendants did not violate the Plaintiff's First Amendment rights by providing Plaintiff with a general diet rather than a vegan diet. To receive First Amendment protection, a plaintiff's claim must be "rooted in religious belief." *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). While prisoners retain First Amendment rights, including free exercise of religion, such rights must coexist with the demands of prison discipline and legitimate institutional objectives. *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir. 1988). A prisoner's right to exercise his religious beliefs is balanced against the legitimate goals of the institution. *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). To constitute a violation of the Free Exercise Clause, the government must place a "substantial burden on the observation of a central religious belief or practice." *Wisconsin v. Yoder*, 406 U.S. at 220-21. If this hurdle is met, the government must then show a compelling interest justifies the burden. *Wisconsin v. Yoder*, 406 U.S. at 220-21. *Id*. The United States Supreme Court has established that "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Accordingly, restrictions that infringe upon an inmate's exercise of religion will be upheld if they are "reasonably related to a legitimate penological interest." *Id*. Relevant factors include: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest, (2) whether there are other means of exercising the right in question for prisoners, (3) the impact accommodating the claimed right would have on guards, other inmates, and prison resources, and (4) the availability of obvious and easy alternatives to the regulation. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). Legitimate penological demands include security and economic concerns. *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). The inmate has the burden of disproving the validity of a challenged prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Within the state penal system context, federal courts accord deference to the decisions of prison administrators. *Turner*, 482 U.S. at 85.

The Illinois Department of Corrections has promulgated regulations pertaining to the exercise of an inmate's religion, including the provision of religious diets within the institution. Specifically, "[c]ommitted persons shall be permitted to abstain from any foods the consumption of which violates their required religious tenets." 20 ILL. ADMIN. CODE § 425.70 (a). The plaintiff's own Exhibit D attached to his Amended Complaint [33] shows that in order to obtain a dietary accommodation for religious reasons, a written request containing verification that "the committed person is a member of a faith group that requires adherence to a particular diet and the specific requirements of the diet" must be submitted to the facility chaplain. 20 ILL. ADMIN. CODE § 425.70 ©. The facility chaplain then determines whether the offender is eligible to receive an alternative diet for religious reasons. *Id*.

Plaintiff's requests to prison officials sought a Halal diet. Such a diet consists of "meat that has been slaughtered in the manner prescribed by the Sharia." According to Plaintiff, the prescribed manner requires keeping the animal "in a humane way prior to slaughter," then slaughtering the animal by "slitting of the throat" while reciting the Qur'an. During the time period relevant to the events in Plaintiff's Complaint, the only dietary requirement known to the Defendants for Muslim inmates was the abstinence from consumption of pork or pork by-products, which Pontiac Correctional Center already did not serve. Plaintiff admits that avoidance of pork is a necessary tenet of his faith. Thus, the fact that Pontiac did not serve pork, and that fruits, vegetables, and grains were part of the dietary offerings, meant that Plaintiff's diet did not violate his religious beliefs. However, Plaintiff wanted prison officials to make a further accommodation by providing him with a diet comprised of meat ritualistically slaughtered. A Muslim Chaplain, Shabazz, providing religious guidance for the institution advised that a Halal diet was not required for the practice of Plaintiff's faith. Furthermore, as there are over 50 religions self-designated by inmates within the Illinois Department of Corrections, and inmates of these varying faiths frequently request accommodations that create additional expense and security and administrative concerns, verification by a religious leader that a certain diet is integral to the practice of a particular faith may be requested.

The Department's practice of having inmates obtain written verification from a spiritual leader to receive a religious dietary accommodation is premised on concerns over administrative and security needs, as well as budgetary constraints. Consistent with *O'Lone*, legitimate penological interests undergird the Department's practice of requesting written verification prior to providing a special dietary accommodation for religious reasons. Plaintiff has the burden of disproving the validity of Departmental Rule 425, which authorizes prison officials to require a verification letter from a spiritual leader before providing a religious dietary accommodation. The Plaintiff failed to do so.

Further, in his response [83] on page 6, the Plaintiff contends that he was never asked by the Defendants to provide verification from a faith leader and further that he provided written verification from a "federally recognized" source as well as from himself. The plaintiff's own Exhbits B and D attached to his Amended Complaint [33] show that he was aware of the requirement that he must provide a verification letter from a spiritual leader to receive a religious dietary accommodation. Further, Plaintiff asserts that he asked the Defendants to speak with Imam Khan about Plaintiff's dietary request. However, the plaintiff does not make the rules. Defendants did speak with Imam Khan and were not required to do so. The Plaintiff had the responsibility to provide written verification from a faith leader that he needed a dietary accommodation – specifically a Halal meal or an alternative to the Halal meal, and he has not alleged that he was prevented from doing so. Plaintiff apparently did not make a request to Imam Khan to provide the verification letter. Plaintiff admittedly did not follow the regulation to provide prison officials with a letter from a spiritual leader that he needed a dietary accommodation – specifically a Halal meal or an alternative to the Halal meal. Further, providing the Defendants with the "federally recognized" source, namely Halal Consumer magazine does not comply with the regulation. This magazine is not a letter from a spiritual letter. Additionally, the dietary accommodation Plaintiff was seeking was not one easily accommodated; Plaintiff asked for a Halal diet entailing the provision of ritualistically-

slaughtered meat. An accommodation to provide Plaintiff with Halal meat could not reasonably accomplished at a correctional center. Plaintiff admits he did not provide written verification of the need for a Halal diet or an alternative dietary accommodation on religious grounds. Thus, Plaintiff has not met his burden in this case. Furthermore, prison officials have demonstrated valid administrative, security, and fiscal concerns in support of their practice of requiring Plaintiff to obtain such a letter.

Plaintiff alleges that because he avoided foods within the general diet it caused his diet to be nutritionally inadequate. The fact that the Plaintiff sometimes chose not to eat the general diet does not amount to a constitutional violation by the Defendants. Further, the fact that the Plaintiff chose to eat certain items from the general diet that caused him to have minor discomforts such as diarrhea is not a constitutional violation by the Defendants. The Plaintiff's attempts to catapult these allegations into a claim that he was denied adequate nutrition, but that is not the case. He never alleges that the general diet was nutritionally inadequate. He alleges that he did not receive adequate nutrition because he refused to eat the general diet that complied with his known religious dietary restriction.

Based on the foregoing, the Defendants, with the exception of certain claims made against Runyon as discussed below, are entitled to summary judgment as a matter of law on the Plaintiff's claim brought pursuant to the First Amendment and all Defendants are entitled to summary judgment as a matter of law on the Plaintiff's claim brought pursuant to The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*,

There are a few claims the court cannot resolve based on the facts before this court. The Plaintiff claims that Defendant Runyon allegedly "knowingly and willingly refused to deliver a vegan tray to the Plaintiff after being ordered to do so by the warden." The Plaintiff has failed to advise the court whether he missed several meals because Runyon refused to deliver a vegan meal and therefore Plaintiff did not receive any meals, or he continued to received the general diet meals, rather than the vegan meals. The fact that Runyon might have refused to serve the Plaintiff a vegan diet, even after the warden ordered him to do so, does not mean that Runyon deprived the Plaintiff of a religious diet. Vegan diet is not a requirement of the Plaintiff's religion. Based on the record before this court, the only dietary requirement for the Plaintiff's religion is that his diet must be free of pork or pork by-products. The court notes that the Plaintiff's claim that the Defendants (including Runyon) deprived the plaintiff of his right to receive a religious diet was discussed above and Runyon is granted summary judgment on this claim. Further, the plaintiff claims Runyon deprived the plaintiff of his right to participate in the fast of Ramadan in a meaningful way." This claim needs to be developed so that the court has an understanding of the Plaintiff's claim.

The only defendant remaining in this case is Defendant Runyon. The only claims remaining in this case are the Plaintiff claim against Defendant Runyon that Runyon refused to deliver a vegan tray to the Plaintiff, claim that Runyon deprived the Plaintiff of his right to participate in the Ramadan in a meaningful way and claim that Runyon altered Plaintiff's meal so much that the meals no longer complied with Recommended Dietary Allowance. If the plaintiff's allegations are true, then he alleges an Eighth Amendment violation. The fact that

these meals might not have complied with the prison menu or the Illinois Administrative Code in itself is not a constitutional violation.

**It is therefore ordered:**

1. **Pursuant to Fed. R. Civ. Pro. Rule 56(c), the Defendants' summary judgment is granted in part and denied in part [57]. Sua sponte, based on the foregoing, pursuant to Fed. R. Civ. Pro. Rule 56(c), summary judgment is also granted to defendant Shabazz. Defendants, Jordan-Luster, Mote, Walker, Ford, Kennell, Melvin, Shabazz, Tucker and Walton are entitled to summary judgment as a matter of law on the Plaintiff's claim brought pursuant to the First Amendment and The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. At the close of this lawsuit, the clerk of the court is directed to enter judgment in favor of the Defendants, Jordan-Luster, Mote, Walker, Ford, Kennell, Melvin, Shabazz, Tucker and Walton.**
2. **The only remaining Defendant in this case is Defendant Runyon. The only remaining claims in this case are the Plaintiff claim against Defendant Runyon that Runyon refused to deliver a vegan tray to the Plaintiff and Runyon altered Plaintiff's meal so much that the meals no longer complied with Recommended Dietary Allowance in violation of the Eighth Amendment and that Runyon deprived the Plaintiff of his right to participate in the Ramadan in a meaningful way.**
3. **The plaintiff's motion for partial summary judgment [43] is denied.**
4. **The plaintiff's motion for clarification [88] and motion to compel [89] are rendered moot.**
5. **A well-supported summary judgment motion is welcomed by the plaintiff and/or the remaining defendant Runyon on the remaining claims.**

**Enter this 3rd Day of August 2007.**

s\Harold A. Baker

_____
**Harold A. Baker
United States District Judge**